UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEONTAE GORDON,

        Plaintiff,

v.                                     Case No. 2:16-cv-89
                                     HON. GORDON J. QUIST

UNKNOWN RONDEAU, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Deontae Gordon filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against Michigan Department of Corrections ("MDOC") employees Mathew Rondeau, Jason Hubble, Daniel O'Dell, Robert Curtis, and Mathew Anderson. Plaintiff asserts claims of retaliation in violation of the First Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and conspiracy to make false statements in violation of the Fourteenth Amendment. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). ECF No. 49. Plaintiff has filed a response, ECF No. 53, and a supplemental brief, ECF No. 56. This matter is now ready for decision.

In 2014, Plaintiff was incarcerated at Alger Correctional Facility. At the time, Defendant Rondeau was a sergeant with the MDOC. His primary responsibility was reviewing grievances, and he reviewed approximately 20-30 grievances per week. On December 10, 2014, Defendant Rondeau interviewed Plaintiff on a grievance Plaintiff filed against Corrections Officer Mattson. Plaintiff alleges that Defendant Rondeau threatened him and said that if Plaintiff kept filing grievances he would "pull the f**king pin himself." ECF No. 1, PageID.8. In response, Plaintiff told Defendant Rondeau that he did not deserve to wear sergeant stripes. Defendant

Rondeau became angry and then spat in Plaintiff's face.  Following the incident, Plaintiff filed a grievance against Defendant Rondeau. Plaintiff also filed a complaint with the Michigan State Police and a Notice of Intent to File a Claim with Michigan Court of Claims.

On December 23, 2014, Defendant Hubble conducted a shakedown of Plaintiff's cell.  Prior to the search, Defendant Hubble removed Plaintiff and his cellmate from the cell and took them to a different room.  Defendant Hubble and another corrections officer, Officer Martin, then proceeded to search the cell and found a razor blade taped underneath Plaintiff's bunk and a pair of scissors with Plaintiff's prison number engraved on the handle.  Defendant Hubble took pictures of both the razor blade and the scissors. As a result, Plaintiff was issued a Class I misconduct for Possession of Dangerous Contraband. Plaintiff alleges that Defendant Hubble planted the razor blade in retaliation for the grievance against Defendant Rondeau.

Because he was issued a Class I misconduct, Plaintiff received a hearing in accordance with Mich. Comp. Laws §§ 791.251 *et seq.*  In addition to Plaintiff's testimony during the hearing, the hearing officer also considered the following evidence:

> Misconduct report, Hearing Investigation Report, Misconduct Sanction Screening Form and Assessment, removal record, prisoner's statement, statements from Hubble and Martin, questions to and answers from Smith (2), LMF OP, and hobbycraft card read to the prisoner. Six photos shown to the prisoner. Hearing Officer examined prisoner's correspondence to the MSP, grievance receipt and complaint (4).

ECF No. 50-3, PageID.338.  At the conclusion of the hearing, Plaintiff was found guilty of the Class I misconduct.[1]  In a three-page hearing report, the hearings officer rejected Plaintiff's version of events—that Defendant Hubble planted the razor blade.  The hearing officer stated:

---

[1] Although the hearing officer determined that the scissors were contraband because Plaintiff was not authorized to possess them, they were not considered "dangerous contraband."

> By the conclusion of the hearing, the prisoner left no doubt that he had the razor blade. Reporting staff member factual and is credible as to what was found and supported by the photos, physical evidence and statement from Martin. It is not believed that the sergeant conspired with an officer to fabricate a misconduct report against the prisoner because the prisoner has taken action against a sergeant on another shift. Nor is it believed that somehow a first shift officer, Mattson, planted the evidence under the prisoner's bunk so a sergeant on second shift would find it.

ECF No. 50-2, PageID.339.

On December 24, 2014, Defendant O'Dell interviewed Plaintiff on the grievance against Defendant Rondeau.  Defendants Curtis and Anderson were the corrections officers who brought Plaintiff to Defendant O'Dell to be interviewed.   In the response to the grievance, Defendant O'Dell stated that Plaintiff admitted during the interview that Defendant Rondeau never spat in his face.  Based on these allegations, Plaintiff alleges that Defendants Curtis, Anderson, and O'Dell conspired to produce these false statements.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th

Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

In addition, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

In his first claim, Plaintiff alleges that Defendant Rondeau spat on him in retaliation for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

-4-

Defendants do not dispute whether Plaintiff was engaged in the protected conduct of filing grievances.  *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996) ("[A prisoner] retains his rights to free speech, and is entitled to petition the state for redress of grievances."). Instead, Defendants argue that Plaintiff did not suffer from an adverse action because Defendant Rondeau never spat in Plaintiff's face.  However, Plaintiff stated that Defendant Rondeau spat in his face in both his verified complaint, ECF No. 1, PageID.8, and his response brief declared under the penalty of perjury, ECF No. 53, PageID.375.  Thus, the undersigned finds that there is a question of fact as to whether Defendant Rondeau spat in Plaintiff's face.

Defendants further contend that Defendant Rondeau is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff cannot establish the causal connection between the protected activity and the adverse action. The undersigned agrees. Plaintiff alleges that the only adverse action taken by Defendant Rondeau was the act of spitting in his face. See ECF No. 1, PageID.12 ("Defendant Rondeau knowingly, willfully and maliciously violated Plaintiff's First and Eighth Amendment rights under the United States Constitution when he retaliated against Plaintiff for filing administrative grievances, by spitting in Plaintiff's face."); ECF No. 53, PageID.375 ("Specifically, Defendant Rondeau retaliated against Plaintiff for filing Administrative Grievances by deliberately a deep drag of mucus in Plaintiffs face."). As noted above, Plaintiff must show that the exercise of the protected right was a substantial or motivating factor in Defendant Rondeau's alleged retaliatory conduct.  *See Smith*, 250 F.3d at 1037. After carefully reviewing Plaintiff's allegations, the undersigned finds that the protected conduct was not a substantial or motivating factor in Defendant Rondeau spitting on Plaintiff.  Instead, Defendant Rondeau spat on Plaintiff because Plaintiff personally insulted him.  In other words, the spitting, assuming it occurred, was in direct response to Plaintiff telling Defendant Rondeau that

he did not deserve to wear the sergeant stripes.  Thus, the undersigned finds that the filing of grievances was not a substantial or motivating factor in the retaliatory conduct and Defendant Rondeau is entitled to summary judgment on the retaliation claim.

Plaintiff also alleges that the same spitting incident violated his rights under the Eighth Amendment.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  A *de minimis* use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind." *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Defendants contend that the one-time spitting incident does not rise to the level of an Eighth Amendment violation.  In *Williams v. Gobles*, 2000 WL 571936, at *1 (6th Cir. 2000)(table), the Sixth Circuit affirmed the dismissal of an Eighth Amendment claim in which a state prisoner alleged that a corrections officer spat on him, threatened him, and called him a racial slur several times.  In addition, several other courts have held that a one-time spitting incident does not rise to an Eighth Amendment violation. *See, e.g.*, *Gill v. Tuttle*, 93 F. App'x. 301, 303 (2d Cir. 2004) (finding that spitting did "not constitute such an infliction of pain, and as such do not rise above a *de minimis* use of force."); *DeMallory v. Cullen*, 855 F.2d 442, 444 (7th Cir. 1988) (affirming summary judgment on Eighth Amendment spitting claim because it did not rise to a

-6-

constitutional violation); *see also Watson v. Dunn*, 2016 WL 1170752, at *2 (W.D. La., Jan. 12, 2016) report and recommendation adopted, 2016 WL 1230638 (W.D. La. Mar. 23, 2016) ("[T]he alleged wrongdoing—spitting one time on Plaintiff—even if intentional, was not harmful enough to establish a constitutional violation."). Although the undersigned does not condone a prison official spitting on an inmate, the undersigned finds that a one-time spitting incident does not rise to an Eighth Amendment violation.

In his next claim, Plaintiff alleges that Defendant Hubble retaliated against him when he planted a razor blade in Plaintiff's cell. Plaintiff was subsequently convicted of a Class I misconduct for Possession of Dangerous Contraband. Defendants argue that Plaintiff's claim against Defendant Hubble is precluded by the factual findings made during the Class I misconduct proceedings. In *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), the Sixth Circuit considered when a court must afford preclusive effect to the factual findings made in prison disciplinary proceedings. The Sixth Circuit found that the Supreme Court's decision in *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), established the proper framework. *Peterson*, 714 F.3d at 912. "'[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts.'" *Id.* (quoting *Elliott*, 478 U.S. at 799). Thus, the Sixth Circuit found four factors relevant when assessing the preclusive effect of prison disciplinary hearings: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before him; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same

preclusive effect as it would be given in state courts. *Id.* at 912-13.  When addressing the fourth

criteria, the Sixth Circuit stated:

> The test Michigan courts apply when deciding whether to give
> preclusive effect to an agency's factual determination proceeds in
> two stages and tracks several of the Elliott factors. The first stage
> applies to all cases where preclusion is claimed, and asks whether:
> (1) a question of fact essential to the judgment was actually litigated
> and determined by a valid final judgment; (2) the parties had a full
> and fair opportunity to litigate the issue; and (3) there is mutuality
> of estoppel. The next stage applies only to parties seeking to
> preclude litigation of a factual issue that was decided by an
> administrative agency. It asks whether: (1) the administrative
> decision was adjudicatory in nature; (2) there was a right to appeal
> from the decision; and (3) the legislature intended to make the
> decision final absent an appeal.

*Id.* at 914.  After applying the test to the Michigan Department of Corrections major misconduct

hearing process, the *Peterson* court concluded that the Michigan courts would grant preclusive

effect to the hearing officer's finding.  *Id.* at 917.

In *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the Sixth Circuit considered

the same issue in another § 1983 civil rights action. The *Roberson* court limited the holding in

*Peterson* and emphasized that the "question of preclusion cannot be resolved categorically, as it

turns on case specific questions such as what issues were actually litigated and decided, and

whether the party to be precluded had sufficient incentives to litigate those issues and a full and

fair opportunity to do so – not just in theory, but in practice. It likewise turns on the court's sense

of justice and equity, which may require a case-by-case analysis of surrounding circumstances."

*Id.* at 404-05 (citations and quotations omitted).

Applying the holdings of *Peterson* and *Roberson*, the undersigned finds that

Plaintiff's retaliation claim is precluded by the hearing's officer finding that Defendant Hubble did

not plant the razor blade.  Plaintiff was charged with a major misconduct and the hearing was

conducted by an independent hearing officer. The hearing officer was acting in a judicial capacity during the Class I misconduct hearing. *See* Mich. Comp. Laws § 791.251. Next, Plaintiff argued that Defendant Hubble planted the razor blade in his cell during the hearing. Thus, whether Defendant Hubble planted the razor blade was actually litigated and decided by the hearing officer.

Plaintiff argues that he did not have a full and fair opportunity to litigate the issue because the hearing officer did not ask a witness the question he requested. The record establishes that Plaintiff requested the hearing investigator to ask prisoner Smith one question—"Did you hear Sgt. Hubble or any other staff talking about setting Gordon up? If so what did you hear?" ECF No.50-3, PageID.355. The hearing officer did not ask this question because Plaintiff did not sign the form. Plaintiff states that he was confused and did not know that he was supposed to sign the form. Although prisoner Smith was not asked Plaintiff's exact question, the hearing investigator asked five questions including, "What other information do you have regarding this razor on how it got placed under the lip of the bottom bunk?" ECF No. 50-3, PageID.354. Prisoner Smith never mentioned Defendant Hubble in any of his answers. In addition, the hearing officer considered Plaintiff's other evidence—testimony, complaints, and a grievance receipt. Ultimately, based on all of the evidence in the record, the hearing officer found Plaintiff was not credible and that Defendant Hubble did not plant the razor blade. In the opinion of the undersigned, Plaintiff had a full and fair opportunity to litigate the issue.

Plaintiff also argues that he did not have an opportunity to appeal the decision. The record establishes that Plaintiff was sent a decision denying his application for a rehearing on April 17, 2015. ECF No. 53-2, PageID.393. According to Mich. Comp. Laws § 791.255(2), Plaintiff had sixty days after receiving the denial to appeal to the Michigan state court. It is unclear why

Plaintiff believes that he did not have an opportunity to appeal the decision.  In the opinion of the undersigned, Plaintiff had an opportunity to appeal the decision.

Because the *Peterson* and *Roberson* standards are met in this case, the undersigned finds that Plaintiff's retaliation claims is precluded by the hearing's officer finding that Defendant Hubble did not plant the razor blade. Therefore, Defendant Hubble is entitled to summary judgment on Plaintiff's retaliation claim.

In his last claim, Plaintiff alleges that Defendants Curtis, Anderson, and O'Dell violated his Fourteenth Amendment right to remain free from civil conspiracy when they conspired to produce false statements in a response to Plaintiff's grievance.  In his motion, Plaintiff states that he "stipulates to the dismissal of the civil conspiracy claims against Defendants O'Dell, Curtis, and Anderson."  ECF No. 53, PageID.377.  Thus, the undersigned recommends dismissing Plaintiff's claim against Defendants O'Dell, Curtis, and Anderson.[2]

Finally, Defendants alternatively move for qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

---

[2] Although Plaintiff stipulates to dismissing the conspiracy claim against Defendants O'Dell, Curtis, and Anderson, Plaintiff filed a motion to amend his complaint to add a retaliation claim against Defendant O'Dell.  However, the Court has denied Plaintiff's motion to amend, ECF No. 58, and the subsequent motion for reconsideration, ECF No. 61.

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* Because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 49) be granted and this case be dismissed.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  February 8, 2018

　　　　　　　　　　　　 /s/ Timothy P. Greeley
　　　　　　　　　　　　TIMOTHY P. GREELEY
　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE